![black box]

26 C.C.P.A.(Patents)

## In re HANSON.
### Patent Appeal No. 4113.

Court of Customs and Patent Appeals.
Feb. 6, 1939.

Rehearing Denied March 6, 1939.

GARRETT, Presiding Judge, and HATFIELD, Associate Judge, dissenting.

———◆———

Wheeler, Wheeler & Wheeler, of Milwaukee, Wis. (S. L. Wheeler, of Milwaukee, Wis., and John J. Darby, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office rejecting, as unpatentable over the cited prior art, claims 1, 2, 17, and 18 of appellant's application for patent. Claims 17 and 18 were submitted to the board with a petition for reconsideration of the board's first decision, with the request that, if not found allowable, they be entered by the board for purposes of appeal. This was done. Certain claims have been allowed. Claims 1 and 18 are illustrative of the claims on appeal and read as follows:

"1. As a new article of manufacture, an annular pan-shaped platen for use in vulcanization, said platen comprising an annular heat delivering pressure applying lower wall of sheet metal having integral upstanding flanges on its inner and outer peripheries."

"18. As a new article of manufacture, a platen and heat unit for use in vulcanization comprising a shallow pan having a bot-

tom constituting a heat-delivering, pressure-applying surface with a central aperture, and a fuel sheet positioned upon and substantially coextensive with said pan bottom and provided with a registering aperture, said pan including flange means extending about the perimeter of said pan and upstanding to confine said sheet thereon, and a second flange means upstanding from said bottom about the aperture therein and projecting through the registering aperture of the fuel sheet, whereby the fuel sheet is held against lateral displacement with regard to said pan bottom and the second flange means serves to protect from the direct heat of the burning fuel sheet a valve stem projecting through said registering apertures in the pan and sheet, a work supporting platen and means marginally engageable with portions of said flange means for pressing the shallow pan toward the work supporting platen."

The references cited are: Fontana, 1,-620,597, March 8, 1927. Oppenheimer, 1,-323,544, December 2, 1919. Gwynn, 2,009,-549, July 30, 1935.

The invention involved relates to apparatus to be used in vulcanizing rubber valve stems to the inner tubes of automobile tires, and is well described by the examiner as follows: "The claims are directed to a device for vulcanizing a valve stem to an inner tube. This device consists of two parts, one (illustrated by Fig. 4) being an annular metallic platen, with upstanding inner and outer walls, for containing the solid fuel, for generating the heat necessary for vulcanization. The central opening accommodates the valve stem. The other part consists of a device for clamping the platen to the work during vulcanization (Fig. 1). It is made, essentially, of a base (5) with a resilient cushion (8) to support the work, a lever (11-12) pivoted to the base, and provided with an adjustable latch (14). A hollow screw (20) is threaded to this lever, and a spider (27) is swiveled to the lower end of the screw, the spider serving to engage the outer periphery of the aforementioned platen, when in operating position."

Only the first part of the device described by the examiner, viz., the annular platen, is involved in this appeal, claims having been allowed for the other part described by the examiner.

The patent to Fontana is for apparatus for use in vulcanizing inner tubes of pneumatic tires, and is directed particularly to the application of repair patches to punctures in such tubes. The apparatus consists of a clamping device, the details of which it is unnecessary to describe. In connection with this apparatus there is disclosed a platen or patch-unit. This consists of a metal cup having a peripheral wall. Within this cup there is positioned a disk of straw-board or other material impregnated with a composition which renders it capable of burning during the necessary period to effect vulcanization. To the underside of this metal cup is glued the rubber patch which is to be vulcanized to the tire. In use the tube is placed upon the work table of the clamping device, the platen unit is placed in registry over the puncture to be repaired, pressure is exerted upon the platen by means of the clamping device, and the fuel within the cup is ignited, causing the patch to be vulcanized to the tube.

The patent to Oppenheimer relates to apparatus for vulcanizing valve stems to inner tubes and shows a clamping device for securing the valve stem base and the inner tube in contact under pressure. In this patent, however, no platen is used, the vulcanizing being effected through the heat of steam introduced into the body or lower portion of the clamping device, said heat being conducted through the supporting table to the work being operated upon. In this patent the valve stem itself projects downwardly through a hole in the lower portion of the clamping device.

The patent to Gwynn also relates to apparatus for vulcanizing valve stems to inner tubes. In this device, as in Oppenheimer, the valve stem projects downward through a central hole in what is referred to as the vulcanizing block. This vulcanizing block forms the lower of the pressure members between which the inner tube and valve stem are secured prior to the vulcanizing operation. Gwynn does not utilize platens as his source of heat, but secures his vulcanizing temperature by means of an electrical heating coil positioned within the vulcanizing block itself.

The last two references referred to are important here only to the extent that they show that it is old to secure rubber valve stems to inner tubes by means of vulcanizing the parts together.

The position of the examiner with respect to claims 1 and 2 was that they were not patentable over Fontana, he holding

that it would involve only design for Fontana to provide his platen with a flanged hole so it could be used to vulcanize valve stems. This view was concurred in by the Board of Appeals, the board in its decision stating that "It is not seen that these claims define anything patentable over the disk-like unit disclosed in the patent to Fontana."

As hereinbefore observed, claims 17 and 18 were entered by the board for purposes of appeal. In dealing with these claims in denying appellant's petition for rehearing, the board stated:

"In addition, we are asked to consider two new claims numbered 17 and 18, and if they cannot be allowed, it is requested that they be entered for appeal. Claim 17 is directed to an annular shaped heating element and while this claim is more specific than claims 1 and 2 which stand rejected on the patent to Fontana, still it covers practically the same subject matter as set forth in said prior claims. We are of the opinion that this claim also is substantially met by the disclosure in the patent to Fontana.

"Claim 18 is directed to a combination of a clamp and the annular shaped heating element. This claim also is deemed to be substantially met by the disclosure in the Fontana patent."

As hereinbefore stated, only the annular platen and heat unit are involved in the claims before us, although claim 18 also provides for means for pressing the platen and work together. However, it is clear to us that this last-named element does not lend patentability to the claims.

The only question before us is whether the platen here involved represents a patentable modification of the platen disclosed by Fontana. The vulcanizing of valve stems to inner tubes was old, as shown by the references Oppenheimer and Gwynn. A platen consisting of a metal cup having a peripheral wall and a heating unit placed therein in the form of a disk was old, as disclosed by Fontana. Of course, such a platen and disk could not be used for vulcanizing valve stems to inner tubes, but it seems to us that it would readily occur to one skilled in the art that it could be so utilized if a hole was placed in the center thereof for the reception of the valve stem, and that an inner flange around this hole would be necessary to protect the valve stem from the heating material while the latter is burning.

It seems to us that the only question is whether the conception that the platen of Fontana might be modified for the purpose of vulcanizing valve stems involved invention, since the necessary modification itself was simple. In view of the state of the art, as disclosed by the references, we are of the opinion that such conception did not involve invention.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.

GARRETT, Presiding Judge, and HATFIELD, Associate Judge, dissent.